UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AARON GREENSPAN,

             Plaintiff,

     v.

DEPARTMENT OF TRANSPORTATION,
et al.,

           Defendants.

Civil Action No. 22-0280 (DLF)

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF
<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

BACKGROUND ................................................................................................................... 1

ARGUMENT ...................................................................................................................... 8

   I.  THE ADEQUACY OF THE SEARCH IS NOT AT ISSUE. ............................................. 8

  II.  THE AGENCY HAS ADEQUATELY SUPPORTED ITS EXEMPTION 4
WITHHOLDINGS. .................................................................................................. 8

     A.   Plaintiff Misconstrues the Meaning and Effect of the Timing Requirement for Ruling
on Confidentiality Requests. ..................................................................................... 8

     B.   The Materials Withheld Under Exemption 4 Are Confidential Business Information,
and Further Disclosure Thereof Is Reasonably Expected to Cause Foreseeable Harm. ........ 10

  III. THE AGENCY HAS ADEQUATELY SUPPORTED ITS EXEMPTION 5
WITHHOLDINGS. .................................................................................................. 15

     A.   Plaintiff Has Not Objected to Defendants' Attorney-Client and Confidential
Commercial Information Withholdings. ...................................................................... 15

     B.   The Agency Has Adequately Supported Its Deliberative Process Withholdings. ........ 17

  IV. THE AGENCY HAS ADEQUATELY SUPPORTED ITS EXEMPTION 6
WITHHOLDINGS. .................................................................................................. 18

CONCLUSION.................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Am. Ctr. for L. & Just. v. Dep't of Just.*,
325 F. Supp. 3d 162 (D.D.C. 2018) .................................. 16

*Anand v. Dep't of Health & Hum. Servs.*,
Civ. A. No. 21-1635 (CKK), 2023 WL 2646815 (D.D.C. Mar. 27, 2023) ........................... 17

*Emuwa v. Dep't of Homeland Sec.*,
113 F.4th 1009 (D.C. Cir. 2024) .................................. 13, 14

*Fitzgibbon v. CIA*,
911 F.2d 755 (D.C. Cir. 1990) .................................. 11

\* *Food Mktg. Inst. v. Argus Leader Media*,
588 U.S. 427 (2019) .................................. 10, 11

*Grimes v. District of Columbia*,
794 F.3d 83 (D.C. Cir. 2015) .................................. 17

*Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*,
284 F. Supp. 2d 15 (D.D.C. 2003) .................................. 16

*Hornbeck Offshore Transp., LLC v. U.S. Coast Guard*,
Civ. A. No. 04-1724 (CKK), 2006 WL 696053 (D.D.C. Mar. 20, 2006) ........................... 16

*Jud. Watch, Inc. v. Dep't of Just.*,
319 F. Supp. 3d 431 (D.D.C. 2018) .................................. 16

*King v. Dep't of Just.*,
Civ. A. No. 15-1445 (RDM), 2021 WL 3363406 (D.D.C. Aug. 3, 2021) ........................... 17

*Knight First Amend. Inst. at Columbia Univ. v. CIA*,
11 F.4th 810 (D.C. Cir. 2021) .................................. 11

*Lash v. Lemke*,
786 F.3d 1 (D.C. Cir. 2015) .................................. 16

*Leopold v. Dep't of Just*,
94 F.4th 33 (D.C. Cir. 2024) .................................. 14

*Lewis v. Dep't of Treas.*,
Civ. A. No. 17-0943 (DLF), 2020 WL 1667656 (D.D.C. Apr. 3, 2020).................. 15, 16, 19

*Mogenhan v. Dep't of Homeland Sec.*,
Civ. A. No. 06-2045 (EGS), 2007 WL 2007502 (D.D.C. July 10, 2007) ........................... 16

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975) .................................. 18

*Padula v. Webster*,
    822 F.2d 97 (D.C. Cir. 1987) ................................................................................. 9

*Pub. Citizen Health Rsch. Grp. v. FDA*,
    704 F.2d 1280 (D.C. Cir. 1983) ............................................................................ 10

*Reps. Comm. for Freedom of the Press v. FBI*,
    3 F.4th 350 (D.C. Cir. 2021) ................................................................................ 13

*Schneider v. Dep't of Just.*,
    Civ. A. No. 18-0474 (DLF), 2019 WL 4737059 (D.D.C. Sept. 28, 2019) .............. 16, 19

*Shapiro v. Dep't of Just.*,
    239 F. Supp. 3d 100 (D.D.C. 2017) ...................................................................... 17

*Still v. Dep't of Lab.*,
    Civ. A. No. 17-1420 (DLF), 2021 WL 4502053 (D.D.C. Sept. 30, 2021) ................ 9

*U.S. ex rel. Accardi v. Shaughnessy*,
    347 U.S. 260 (1954) ............................................................................................... 9

*Unrow Hum. Rts. Impact Litig. Clinic v. Dep't of State*,
    134 F. Supp. 3d 263 (D.D.C. 2015) ................................................................. 11, 12

*Wolf v. CIA*,
    473 F.3d 370 (D.C. Cir. 2007) ............................................................................. 12

## Rules

Fed. R. Civ. P. 1 .................................................................................................... 17

Fed. R. Civ. P. 56 ................................................................................................... 1

## Regulations

49 C.F.R. §§ 512.14–512.19 .................................................................................... 9

49 C.F.R. § 512.17 ............................................................................................. 6, 9

49 C.F.R. § 512.18 ................................................................................................. 9

49 C.F.R. § 512.19 ................................................................................................. 9

Defendants, the Department of Transportation and National Highway Traffic Safety Administration ("Agency" or "NHTSA"), respectfully submit this reply in further support of their cross-motion for summary judgment. As demonstrated in Defendants' *Vaughn* indices and declarations and described further below and in their opening brief, Defendants appropriately withheld or redacted the material at issue pursuant to Freedom of Information Act ("FOIA") Exemptions 4, 5, and 6. Defendants respectfully request that this Court grant summary judgment in their favor.

## BACKGROUND

Plaintiff's opposition raises no dispute regarding the Agency's Exemption 5 attorney-client privilege or confidential commercial information privilege withholdings and no dispute regarding the Agency's Exemption 6 withholdings. Rather, his opposition addresses the Agency's Exemption 4 and Exemption 5 deliberative process withholdings and raises contentions related to foreseeable harm and segregability. Plaintiff's opposition largely concedes the facts in Defendants' statement of facts (ECF No. 43-2). *See* Pl.'s Opp'n (ECF No. 45) at 10 (itemizing the paragraphs that he disputes). For the handful of paragraphs in which Plaintiff purports to dispute the facts, he fails to offer any admissible evidence supporting his dispute. *See* Fed. R. Civ. P. 56(e)(2), (e)(3).

The following table lists each statement of material fact as to which there is no genuine dispute previously submitted with Defendants' cross-motion for summary judgment (ECF No. 43-2) and tracks any corresponding response from Plaintiff's opposition.

| Defendants' Statement of Fact | Plaintiff's Response |
|---|---|
| 1. On March 7, 2021, Plaintiff Aaron Greenspan submitted a Freedom of Information Act ("FOIA") request to the Agency. Third Am. Compl. (ECF No. 21) ¶ 8. The request sought "[c]opies of any and all e-mails (with attachments), | N/A |

| Defendants' Statement of Fact | Plaintiff's Response |
|---|---|
| letters and/or subpoenas to or from Tesla, Inc. (domain names tesla.com or teslamotors.com) from June 3, 2019 through present regarding self-driving vehicles, autonomous vehicles, smart summon, and/or 'robo-taxis' (with or without the hyphen)." Second Am. Compl., Ex. 1 (ECF No. 7-1) at 3. The request is NHTSA Request No. ES21-000275. *See, e.g.*, Jt. Status Rep. (ECF No. 37) ¶ 1. | |
| 2. On March 8, 2021 (Eastern Time), Plaintiff submitted a separate FOIA request to the Agency. *See, e.g.*, Third Am. Compl. (ECF No. 21) ¶ 21 (heading); Declaration of Allison Hendrickson ("Hendrickson Decl.," [ECF No. 43-3]) ¶ 4. The request sought "[a]ny written disclosures and/or e-mails to or from NHTSA employee Ajit Alkondon (ajit.alkondon@dot.gov) regarding his personal investments and corporate entities in which he has an ownership or managerial stake (Magellan Tutoring LLC, Pineapple Love Properties LLC and Lucrum Properties LLC) from January 1, 2007 to present" and "[a]ny e-mails between ajit.alkondon@dot.gov and any tesla.com e-mail address from January 1, 2016 to present." Third Am. Compl. ¶ 21. The request is NHTSA Request No. ES21-000180 ("Request x0180"). *See, e.g.*, Jt. Status Rep. (ECF No. 37) ¶ 1. | N/A |
| 3. On May 27, 2021, Plaintiff submitted a FOIA request to the Agency. Third Am. Compl. (ECF No. 21) ¶ 39. The request sought "[a]ll e-mails (to or from the tesla.com domain name, or generated by NHTSA or [Department of Transportation]), memoranda, presentations, briefings, meeting notes, videoconference/call notes, test results, or other documents from February 1, 2021 through present regarding the disabling and/or removal of radar from certain Tesla vehicles." Second Am. Compl., Ex. 4 (ECF No. 7-1) at 10. The request is NHTSA Request No. ES21-000398. | N/A |
| 4. On November 16, 2024, Plaintiff "narrow[ed] the FOIA requests at issue in Case No. 1:22-cv-00280-DLF [i.e., this case] to only those documents that have been processed thus far." Pl.'s Email (ECF No. 39-1) at 2. The Agency accepted Plaintiff's narrowing of the requests. *See, e.g.*, Defs.' Resp. (ECF No. 39) ¶ 3 ("NHTSA has accepted Plaintiff's narrowing of this case, and this case may proceed to summary judgment in light of Plaintiff's narrowing of the FOIA requests to just the documents produced to date | N/A |

| Defendants' Statement of Fact | Plaintiff's Response |
|---|---|
| in connection with this litigation, which is still a significant volume, as noted in the preceding paragraph."). | |
| 5.  By November 16, 2024, the Agency had processed 23,898 pages in response to the FOIA requests at issue in this litigation. *See, e.g.*, Hendrickson Decl. ¶ 14; Declaration of Shonda Humphrey ("Humphrey Decl.," [ECF No. 43-4]) ¶ 18. | N/A |
| 6.  As described in the Agency's Exemption 4 *Vaughn* index [ECF No. 43-6] and the Hendrickson Declaration, the Agency has withheld in full 20,341 pages, 159 Excel spreadsheets, and 64 media files under FOIA Exemption 4. Hendrickson Decl. ¶ 14. | N/A |
| 7.  The information withheld under Exemption 4 is technical and propriety information from Tesla.  Declaration of Eddie Gates ("Gates Decl.," [ECF No. 43-5]) ¶ 6. | Plaintiff disputes paragraph 7 in the Government Defendants' Statement of Material Facts As To Which There Is No Genuine Dispute. It is not true that all of "[t]he information withheld under Exemption 4 is technical and propriety information from Tesla." |
| 8.  Tesla takes extensive measures to guard and protect the information withheld under Exemption 4.  Gates Decl. ¶ 6; *see also id.* ¶ 9. | N/A |
| 9.  Tesla has described the competitive harms it would suffer if further segregation or disclosure of the Exemption 4 materials were ordered.  *See, e.g.*, Gates Decl. ¶¶ 6–7, 11–66. | N/A |
| 10.  The Agency and Tesla both performed a line-by-line review of all Exemption 4 withholdings.  *See, e.g.*, Hendrickson Decl. ¶ 25; Gates Decl. ¶ 7. | N/A |
| 11.  Further segregation or disclosure of the records withheld under Exemption 4 would cause foreseeable competitive harm to Tesla and, because disclosure would impact the willingness of entities such as Tesla to provide confidential information, foreseeable harm to the Agency itself in obtaining information necessary to fulfill its core safety mission.  Hendrickson Decl. ¶ 25. | Plaintiff also disputes paragraph 11 in the Government Defendants' Statement of Material Facts As To Which There Is No Genuine Dispute.  It is not true that "Further segregation or disclosure of the records withheld under Exemption 4 would cause foreseeable competitive harm to Tesla" or to "the Agency itself." |

3

| Defendants' Statement of Fact | Plaintiff's Response |
|---|---|
| 12. As described in the Agency's Exemptions 5/6 *Vaughn* index [ECF No. 43-7] and the Humphrey Declaration, the Agency has withheld material in full or in part under FOIA Exemption 5 in 115 documents, with 111 documents containing deliberative process withholdings, fifty-nine documents containing attorney-client privilege withholdings (overlapping with the deliberative process withholdings), and four documents containing confidential commercial information withholdings.  Humphrey Decl. ¶ 18. | N/A |
| 13. The materials withheld under the deliberative process privilege were all internal NHTSA emails and draft documents discussing and providing recommendations on how to proceed with the Agency's investigatory and enforcement activity concerning Tesla's vehicles. Humphrey Decl. ¶¶ 19–20. | N/A |
| 14. The materials withheld under the deliberative process privilege do not reflect a final decision, and the sender did not have final decisionmaking authority.  Humphrey Decl. ¶ 20. | N/A |
| 15. If the material withheld under the deliberative process privilege were disclosable, the Agency's personnel would become hesitant to candidly discuss ideas or proposals for handling safety investigations, which would harm transparency as it would become more difficult for the agency to critically consider what types of information could be shared upon a public request.  Humphrey Decl. ¶¶ 19–20. | Plaintiff also disputes paragraph 15 in the Government Defendants' Statement of Material Facts As To Which There Is No Genuine Dispute. Disclosure of NHTSA's dysfunctional purported "deliberations" would have absolutely no impact on future discourse, especially as Defendant United States Department of Transportation and all of its component agencies have no plans to regulate any Elon Musk-led company at this point. |
| 16. The Agency has also invoked the attorney-client privilege to protect a subset of the deliberative process withholdings, where an attorney with the Agency sent or received the email, and the email was sent in furtherance of receiving or requesting legal advice within the Agency.  Humphrey Decl. ¶ 21. | N/A |

| Defendants' Statement of Fact | Plaintiff's Response |
|---|---|
| 17. The Agency has maintained the confidentiality of these communications, and their disclosure would harm the Agency and the attorney-client relationship. Humphrey Decl. ¶ 21. | N/A |
| 18. The Agency withheld conference call numbers and passcodes under the confidential commercial information privilege. Humphrey Decl. ¶¶ 18, 22. | N/A |
| 19. The release of conference call numbers and passcodes would allow uninvited third parties to illegally listen to confidential internal calls and would harm the Agency. Humphrey Decl. ¶ 22. | N/A |
| 20. Further segregation or disclosure of the records withheld under Exemption 5 would cause foreseeable harm to the Agency. Humphrey Decl. ¶ 23. | Plaintiff also disputes paragraph 20 in the Government Defendants' Statement of Material Facts As To Which There Is No Genuine Dispute. There is no reason why the documents withheld under Exemption 5 cannot be further segregated to facilitate disclosure as required by FOIA. |
| 21. As described in the Agency's Exemptions 5/6 *Vaughn* index [ECF No. 43-7] and the Humphrey Declaration, the Agency has withheld certain material on 683 documents, 127 Excel spreadsheets, and seventeen media files as exempt under Exemption 6. Humphrey Decl. ¶ 24. | N/A |
| 22. The Agency withheld names of individuals who are not Agency employees, signatures, physical addresses, e-mail addresses, images of persons, phone numbers, driver's license numbers, and dates of birth under Exemption 6. Humphrey Decl. ¶ 25. | N/A |
| 23. The Agency withheld license plate numbers, location descriptions, tracking numbers, complaint numbers, serial numbers, claim numbers, court filing information, correspondence dates, appointment dates, and financial transaction information under Exemption 6, as their disclosure would allow others to identify the individuals from the records. Humphrey Decl. ¶ 26. | N/A |
| 24. The Agency withheld vehicle identification numbers ("VINs") under Exemption 6, as their disclosure would allow the vehicles' owners to be identified. Humphrey Decl. ¶ 27. | N/A |

| Defendants' Statement of Fact | Plaintiff's Response |
|---|---|
| 25. The Agency withheld crash incident dates, location descriptions, and descriptions of physical or mental effects of a crash incident, as their disclosure would allow the identification of individuals involved in vehicular crashes. Humphrey Decl. ¶ 28. | N/A |
| 26. Public disclosure of the information withheld under Exemption 6 would allow others to obtain and exploit personally identifiable information for commercial or private gain, including by subjecting the individuals to unwanted intrusion into their experiences and solicitation, harassment, and contact by the media, attorneys, and other interested parties. Humphrey Decl. ¶ 29. | N/A |
| 27. The Agency has attested, after balancing the equities, that any further segregation or disclosure of the material withheld under Exemption 6 is reasonably expected to foreseeably harm the substantial privacy interest of the individuals at issue. Humphrey Decl. ¶¶ 29–30. | N/A |

Despite Plaintiff's hyperbolic language concerning Defendants' declarants, Plaintiff's response essentially breaks down into two arguments. First, Plaintiff once again advances his flawed understanding of the meaning and effect of the Agency's regulation, 49 C.F.R. § 512.17. Plaintiff misreads the regulation to impose a mandatory deadline by which the Agency must issue a confidentiality determination. Plaintiff relies on this misinterpretation to argue that, because the Agency indisputably did not rule on the confidentiality requests by that time, the Agency cannot withhold confidential information under Exemption 4 regardless of any statutory obligations to do so. Second, Plaintiff dismisses Tesla's representations about how the company treats its confidential information simply because Tesla has been subject to occasional leaks. With respect to the latter issue, Plaintiff does not contend that the specific documents he has requested have been previously made available to the public—either by Tesla or by an unsanctioned leak. *See* Pl.'s Opp'n at 13 ("Even viewed in the most favorable light—that perhaps the specific data transmitted to NHTSA directly in response to NHTSA's requests for information [at issue here]

remains under Tesla's control—it is still true that *similar* information of the *same type* absolutely

does not." (emphases in original)).

Plaintiff also includes strong language indicating a belief that Elon Musk is "Co-President

of the United States," that the Agency has some amount of "slavish devotion" to him, and that the

Department and all its component agencies "have no plans to regulate any Elon Musk-led company

at this point." *Id.* at 9, 10, 13. These baseless allegations are not supported by admissible evidence

and should be disregarded by the Court.

Even the timeline of this case illustrates the baselessness of these accusations. The Agency

generally determined appropriate Exemption 4 withholdings during the previous Presidential

administration, and Plaintiff, on November 16, 2024, narrowed the records at issue in this case to

documents already processed by that date. *See* Pl.'s Email (ECF No. 39-1) at 2. To the extent any

withholding determinations were changed during the current Presidential administration, it was to

disclose additional information, not claw back any information. *See* Hendrickson Decl. (ECF

No. 43-3) ¶ 22 (disclosing information on March 14, 2025, that had previously been withheld

because this information "had since lost its confidential status"). The Agency continues to regulate

Tesla as it would any similar company. *See, e.g.*, NHTSA, *Part 573 Safety Recall Report:

2024-2025 Tesla Cybertruck*, at 3, Mar. 18, 2025, https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-

25V170-9407.PDF ("On February 21, 2025, NHTSA [Office of Defects Investigation] notified

Tesla of a vehicle owner questionnaire (VOQ) alleging cant rail panel detachment. From

February 21, 2025, through March 7, 2025, Tesla investigated the VOQ, complaints identified

through social media, and service records of loose or separated cant rail panels.[1] On March 11,

2025, having completed its investigation, Tesla made a determination to voluntarily recall the

---

[1]    The exterior trim panel is also known as the cant rail on Tesla's Cybertrucks.

affected vehicles."); *see also* Andrew J. Hawkins, *Trump's Transportation Pick Says He'll Let Tesla Investigations Proceed*, The Verge, Jan. 15, 2025, https://www.theverge.com/2025/1/15/24344462/sean-duffy-usdot-nhtsa-tesla-investigation-confirmation.

## ARGUMENT

Defendants respectfully submit that they have adequately supported their withholdings under FOIA Exemptions 4, 5, and 6.

## I.    THE ADEQUACY OF THE SEARCH IS NOT AT ISSUE.

As Defendants demonstrated in their opening brief and as was not disputed in Plaintiff's opposition, the adequacy of the search is not at issue here.

## II.    THE AGENCY HAS ADEQUATELY SUPPORTED ITS EXEMPTION 4 WITHHOLDINGS.

### A.    Plaintiff Misconstrues the Meaning and Effect of the Timing Requirement for Ruling on Confidentiality Requests.

Plaintiff's argument that the purported expiration of Tesla's confidential treatment requests should foreclose the Agency from withholding any material under Exemption 4 fails. Plaintiff castigates Defendants for not giving his argument more focus, but the Court has already rejected Plaintiff's argument twice before, *see, e.g.*, Order (ECF No. 28) at 2–4 & n.2; Order (ECF No. 33) at 5, and the Court is not well-served by the parties continuing to "repeat the tired argument" that the Court has already heard multiple times. Pl.'s Opp'n at 7.

As the Court has confirmed previously, "[n]owhere does the regulation say that requests for confidential treatment expire if not ruled on twenty [working] days after their receipt, so invoking Exemption 4 to withhold records is not automatically unjustified simply because the Administration relied on a confidential treatment request more than twenty days old." Order (ECF No. 33) at 5. The sole basis for Plaintiff's argument that the Agency has somehow changed its regulatory interpretation is the administrative decision (ECF No. 26-1) for one of Plaintiff's prior

administrative appeals for a FOIA request not at issue in this litigation.  Pl.'s Opp'n at 9.  Plaintiff continues to misunderstand that administrative decision, which Defendants have explained (Defs.' Open. Br. (ECF No. 43-1) at 19–20), yet Plaintiff fails to acknowledge.

Plaintiff's *Accardi* argument likewise fails.  Pl.'s Opp'n at 9 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)).  Among other problems with Plaintiff's argument, "a rule is subject to *Accardi* if it limits the agency's discretion and imposes 'rights or obligations on the respective parties.'"  *Still v. Dep't of Lab.*, Civ. A. No. 17-1420 (DLF), 2021 WL 4502053, at *4 (D.D.C. Sept. 30, 2021) (quoting *Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987)).  The regulation at issue is not directed at FOIA requestors, but at submitters of business information; therefore, it does not impose rights or obligations on Plaintiff.  *See* 49 C.F.R. § 512.17; *see also id.* §§ 512.14–512.19.  These regulations explain the rights of submitters of business information, including what they can do if they disagree with the determination, *id.* § 512.19, and how they will be notified of the determination, *id.* § 512.18.  These regulations are intended to provide due process for submitters to request the protection of their confidential business information—not, as Plaintiff claims, create procedural traps whereby otherwise confidential information can lose protected status simply due to the amount of time it takes the Agency to adjudicate the confidentiality requests.  Thus, these regulations do not impose any rights on Plaintiff, and Plaintiff's reading of the regulations is at odds with their purpose.

Plaintiff's reading of the regulations would also undermine statutory protections on confidentiality.  Plaintiff's response confirms that his interpretation of the Agency's regulation would impose an "extra-statutory" requirement that a business submitter must suffer the disclosure of its confidential business information if the Agency allegedly took too long to adjudicate its request for confidential treatment.  Pl.'s Opp'n at 8 n.1.  As the Supreme Court has confirmed,

"just as we cannot properly *expand* Exemption 4 beyond what its terms permit, we cannot arbitrarily *constrict* it either by adding limitations found nowhere in its terms." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 439 (2019) (emphasis in original; citation omitted); *see also Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1287 (D.C. Cir. 1983) ("Congress has made clear both that the federal courts, and not the administrative agencies, are ultimately responsible for construing the language of the FOIA, and that agencies cannot alter the dictates of the Act by their own express or implied promises of confidentiality." (citations omitted)). Accordingly, the Agency is not foreclosed from asserting Exemption 4 due to purported failures to comply with time limits found in its regulation.

**B.    The Materials Withheld Under Exemption 4 Are Confidential Business Information, and Further Disclosure Thereof Is Reasonably Expected to Cause Foreseeable Harm.**

Through a comprehensive *Vaughn* index (ECF No. 43-6) and the Declarations of Allison Hendrickson (ECF No. 43-3) and Eddie Gates (ECF No. 43-5), Defendants have adequately supported the Exemption 4 withholdings at issue in this litigation. Plaintiff's opposition argues: (1) Tesla has experienced leaks of supposedly similar information in the past; (2) Tesla's foreseeable harm attestations are too boilerplate; (3) the fact that some documents have been segregated and disclosed indicates that the documents withheld in full should likewise be segregated; and (4) documents discussing Tesla's Early Access Program would have no interest to competitors. Pl.'s Opp'n at 13–17. Each of these arguments fails.

First, Plaintiff's claim that a large institution has allegedly suffered unauthorized leaks of similar information is irrelevant. The Supreme Court has confirmed that, under Exemption 4, "information communicated to another remains confidential whenever it is customarily kept private, or at least closely held, by the person imparting it." *Argus Leader*, 588 U.S. at 434. Thus, the information need only be "customarily kept private, or at least closely held," in order to qualify

as confidential. *Id.* An alleged unauthorized leak of similar confidential information, even if it were properly substantiated, does not dispute Tesla's attestations of confidentiality. *See, e.g.*, Gates Decl. ¶¶ 5–6, 9.

There is a clear analogue between Plaintiff's arguments regarding alleged unauthorized leaks and the "official acknowledgment" doctrine. Under that doctrine, for disclosure to be compelled, "a plaintiff must identify information in the public domain that (1) matches the information requested, (2) is as specific, and (3) has 'been made public through an official and documented disclosure.'" *Knight First Amend. Inst. at Columbia Univ. v. CIA*, 11 F.4th 810, 815 (D.C. Cir. 2021) (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990)); *see also Unrow Hum. Rts. Impact Litig. Clinic v. Dep't of State*, 134 F. Supp. 3d 263, 275 (D.D.C. 2015) ("'[P]ublic disclosure alone is insufficient,' because 'the information must also be officially acknowledged.' This is because 'there can be a critical difference between unofficial and official disclosures,'— 'the fact that information exists in some form in the public domain does not necessarily mean that official disclosure will not cause [cognizable] harm.'" (citations omitted)).

Here, Tesla has attested that it "takes extensive measures to guard and protect [the withheld] information even internally." Gates Decl. (ECF No. 43-5) ¶ 6. For instance, when Tesla must share this information "to obtain advice and assistance from counsel and other confidential advisors" or outside consultants, Tesla employs "binding nondisclosure agreements." *Id.* "Tesla maintains ownership over the confidential information" at issue here. *Id.* ¶ 5. "Tesla customarily and actually treats each of the categories of information [at issue] as technical and proprietary information, and Tesla does not disclose this information publicly in the ordinary course of its business." *Id.* ¶ 6. Thus, this information is "customarily kept private, or at least closely held, by the person imparting it," which is all that the law requires. *Argus Leader*, 588 U.S. at 434.

Further, Plaintiff does not contend that the same information has been previously disclosed—not even by an unauthorized leaker. *See* Pl.'s Opp'n at 13 (asserting merely that "*similar* information" has been disclosed by leakers (emphasis in original)). "[P]rior disclosure of *similar* information does not suffice; instead, the specific information sought by plaintiff must already be in the public domain by official disclosure." *Unrow*, 134 F. Supp. 3d at 275 (emphasis in original; quoting *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007)).

Second, Plaintiff objects to Tesla's foreseeable harm attestations. Plaintiff's unsupported assertion that "Tesla provide[d] no specific examples of how disclosure would harm the company at all," Pl.'s Opp'n at 16, is directly refuted by the information provided in the Declaration of Eddie Gates. For each category of withheld information, Tesla explained the competitive harm it would suffer by further disclosure. *See, e.g.*, Gates Decl. ¶ 11 ("Public disclosure of Tesla's vehicle software availability, development and deployment strategies and processes would cause competitive harm to Tesla by giving Tesla's competitors insight into aspects of Tesla's engineering and business operations which would be used to improve their own software and development strategies and processes."); *id.* ¶ 12 ("Public disclosure of Tesla's engineering assessment of field incidents would cause competitive harm to Tesla by giving Tesla's competitors insight into how Tesla's collects and uses available data, and how Tesla engineers assess incidents in the field which would be used to improve their own data collection processes and field incident assessments and ultimately improve vehicle design."); *id.* ¶ 13 ("Public disclosure of the volume of Tesla vehicles that requested access to [Full Self-Driving] Beta as of the date listed in the response would cause competitive harm to Tesla by giving Tesla's competitors insight into Tesla vehicle capability, feature availability and business planning and operations which would be used to improve their own vehicle capability and feature availability."); *see also id.* ¶¶ 14–66. Tesla's context-specific

attestations of harm, which are tailored to each of the dozens of unique categories of information identified in the Gates Declaration, *see id.* ¶¶ 11–66, fully satisfy *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021), and its progeny. *See, e.g.*, *Emuwa v. Dep't of Homeland Sec.*, 113 F.4th 1009, 1015–16 (D.C. Cir. 2024) ("The affidavit thus showed 'a link between the specified harm'—reduced candor by line asylum officers making recommendations to superiors—'and the specific information' withheld—the officials' analyses of applicants' interviews." (quoting *Reps. Comm.*, 3 F.4th at 371)).

In addition, Plaintiff's claim that Tesla would not suffer competitive harm from the release of the confidential information simply because "competitors know that computer programs produce log files and what data Tesla's log files generally capture," fails. Pl.'s Opp'n at 16. Knowledge that certain types of information exist is, in the context of vehicle technology development, drastically different from possessing the actual data.

The Agency did not blindly accept Tesla's attestations of competitive harm. *See* Hendrickson Decl. ¶ 17. The Agency "performed a line-by-line review of the documents withheld in full or in part and confirmed, as further described in NHTSA's *Vaughn* index, that further segregation or disclosure of these records would cause foreseeable competitive harm to Tesla and, because disclosure would impact the willingness of entities such as Tesla to provide confidential information, foreseeable harm to NHTSA itself in obtaining information necessary to fulfill its core safety mission." *Id.* ¶ 25; *see also id.* ¶ 21 ("NHTSA has reviewed the declaration of Eddie Gates, in connection with its own independent review of the records at issue, and is independently satisfied that the records that NHTSA has withheld in full or in part are appropriately withheld under Exemption 4."); *id.* ¶ 17 (denying some of Tesla's requests for confidential treatment here).

Third, in three sentences citing no evidence or authorities, Plaintiff objects on segregability grounds.  Pl.'s Opp'n at 16.  Where an agency declarant "confirmed that her office 'review[ed]' the redactions to 'consider[ ] whether any information could be segregated and released without causing a foreseeable harm to the agency'" and "explained the agency's view that 'no further segregation' was possible without disclosing such information," the agency "conduct[s] the segregability analysis required for assessing foreseeable harm."  *Emuwa*, 113 F.4th at 1017 (quoting joint appendix; citing *Leopold v. Dep't of Just*, 94 F.4th 33, 37–38 (D.C. Cir. 2024)).  That is precisely what the Agency did here.  *See* Hendrickson Decl. ¶ 25 ("NHTSA performed a line-by-line review of the documents withheld in full or in part and confirmed, as further described in NHTSA's *Vaughn* index, that further segregation or disclosure of these records would cause foreseeable competitive harm to Tesla and, because disclosure would impact the willingness of entities such as Tesla to provide confidential information, foreseeable harm to NHTSA itself in obtaining information necessary to fulfill its core safety mission.").

Plaintiff objects that because the Agency disclosed some documents in part, it should also have disclosed in part all other documents.  *See* Pl.'s Opp'n at 16 ("Other documents have been segregated, so it is unclear why the withheld documents cannot be.").  But the fact that the Agency did disclose some documents in full or in part serves merely to confirm that the Agency has indeed given due consideration to FOIA's segregability requirement.  *See, e.g.*, Hendrickson Decl. ¶¶ 17, 24.  The segregability of one document does not inherently mean that all other documents are also segregable.

Lastly, Plaintiff isolates a single category of records—i.e., records pertaining to Tesla's Early Access Program—and asserts, citing no admissible evidence, that the Early Access Program documents would not be of interest to Tesla's competitors.  Pl.'s Opp'n at 16–17.  The Early

Access Program is a voluntary, invite-only program where users can try out features before they are generally released. Tesla, *Impact Report: 2019*, at 24, https://www.tesla.com/ns_videos/2019-tesla-impact-report.pdf (last accessed Mar. 31, 2025). News reports demonstrate that Tesla's Early Access Program is not "long since over," as Plaintiff asserts without evidence. *See, e.g.*, Jameson Dow, *Tesla Has Finally Enabled FSD on (Some) Cybertrucks*, Electrek, Sept. 29, 2024, https://electrek.co/2024/09/29/tesla-has-finally-enabled-fsd-on-some-cybertrucks/.

In any event, Tesla has attested that "[p]ublic disclosure of the terms of Tesla's Early Access Program would cause competitive harm to Tesla by giving Tesla's competitors insight into Tesla's new feature evaluation process which would be used to improve their own vehicle features and customer experience." Gates Decl. ¶ 14. Further, "[p]ublic disclosure of details regarding participation in Tesla's Early Access Program and employee pilot program would cause competitive harm to Tesla by giving Tesla's competitors insight into Tesla's new feature evaluation process which would be used to improve their own vehicle features and customer experience." *Id.* ¶ 28. Tesla's dozens of category-specific attestations of harm fully demonstrate that Tesla foresees harm from further disclosure of this material. Accordingly, Defendants have adequately supported the Agency's Exemption 4 withholdings.

## III.    THE AGENCY HAS ADEQUATELY SUPPORTED ITS EXEMPTION 5 <u>WITHHOLDINGS.</u>

### A.    Plaintiff Has Not Objected to Defendants' Attorney-Client and Confidential Commercial Information Withholdings.

The Agency's Exemption 5 withholdings fall into three categories: (1) deliberative process privilege; (2) attorney-client communications privilege; and (3) commercial confidential information privilege. Plaintiff has not objected to Defendants' attorney-client or confidential commercial information withholdings and has forfeited any arguments concerning those withholdings. *See, e.g.*, *Lewis v. Dep't of Treas.*, Civ. A. No. 17-0943 (DLF), 2020 WL 1667656,

at *1 n.2 (D.D.C. Apr. 3, 2020) ("Lewis does not challenge the withholdings under Exemptions 3, 4, 6 or 7(C), and he only challenges the FinCEN's decision to withhold records under Exemption 7(E) in full.  He therefore concedes that FinCEN's withholdings under Exemption 7(C) and FinCEN's redactions under Exemptions 3, 4, 6, and 7(E) are proper." (citations omitted)); *Schneider v. Dep't of Just.*, Civ. A. No. 18-0474 (DLF), 2019 WL 4737059, at *4 (D.D.C. Sept. 28, 2019) ("Schneider does not specifically challenge the government's withholding of records under Exemption (j)(2) of the Privacy Act.  Thus, Schneider apparently concedes that the FBI complied with the Privacy Act." (citing *Lash v. Lemke*, 786 F.3d 1, 10 (D.C. Cir. 2015))); *Jud. Watch, Inc. v. Dep't of Just.*, 319 F. Supp. 3d 431, 434 n.1 (D.D.C. 2018) (similar); *Mogenhan v. Dep't of Homeland Sec.*, Civ. A. No. 06-2045 (EGS), 2007 WL 2007502, at *5 (D.D.C. July 10, 2007) (similar); *Hornbeck Offshore Transp., LLC v. U.S. Coast Guard*, Civ. A. No. 04-1724 (CKK), 2006 WL 696053, at *23 (D.D.C. Mar. 20, 2006) (similar).

Just as parties may narrow the dispute for the Court in a joint status report prior to moving for summary judgment, they may narrow the dispute in a summary judgment opposition or by addressing only certain arguments raised by the defendants.  *See, e.g.*, *Lewis*, 2020 WL 1667656, at *1 n.2 (treating withholdings for various FOIA exemptions as conceded because "[i]t is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded" (quoting *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003))); *Am. Ctr. for L. & Just. v. Dep't of Just.*, 325 F. Supp. 3d 162, 168 (D.D.C. 2018) ("[O]nce the parties have appeared in a civil matter, they routinely agree to narrow the issues in dispute or to give up important procedural rights.  If they could not, civil litigation would not serve its purpose of offering a 'just, speedy, and inexpensive

determination of every action.'" (quoting Fed. R. Civ. P. 1)).  Accepting a party's ability to narrow the issues for the Court's consideration is not the same as considering summary judgment conceded by a failure to file an opposition within the time allotted.  *See King v. Dep't of Just.*, Civ. A. No. 15-1445 (RDM), 2021 WL 3363406, at *4 (D.D.C. Aug. 3, 2021) ("The rule that a motion for summary judgment cannot be conceded by a failure to respond 'does not mean . . . that the Court must assess the legal sufficiency of each and every exemption invoked by the government in a FOIA case, regardless of whether the requester contests the government's invocation of that exemption.'" (quoting *Shapiro v. Dep't of Just.*, 239 F. Supp. 3d 100, 106 n.1 (D.D.C. 2017))). Plaintiff's "fail[ure] to come forward with sufficient evidence" to demonstrate that the Agency's withholdings are improper warrants summary judgment in favor of Defendants.  *Grimes v. District of Columbia*, 794 F.3d 83, 93 (D.C. Cir. 2015).

**B.    The Agency Has Adequately Supported Its Deliberative Process Withholdings.**

Plaintiff's sole argument in opposition to Defendants' deliberative process withholdings is that Defendants purportedly failed to identify the decision at issue or the role the documents played.  Pl.'s Opp'n at 12–13.  Defendants, however, did just that.  *See, e.g.*, Defs.' Open. Br. (ECF No. 43-1) at 38–39; Humphrey Decl. (ECF No. 43-4) ¶¶ 19–20.  The withheld material "reflects the internal exchange of information, ideas, and recommendations that occurred relating to a potential investigation while NHTSA personnel were in the process of formulating strategies and approaches towards next steps or options in connection with that potential investigation." Humphrey Decl. ¶ 19.  "[T]he deliberative process was how to proceed with NHTSA's investigatory and enforcement activity concerning Tesla's vehicles."  *Id.* ¶ 20; *see also Anand v. Dep't of Health & Hum. Servs.*, Civ. A. No. 21-1635 (CKK), 2023 WL 2646815, at *19 (D.D.C. Mar. 27, 2023) ("The analysis . . . conducted was certainly created for the purpose of aiding [the

Office of Inspector General] in determining how to proceed with certain investigations; accordingly, the Court finds that these communications satisfy the Exemption 5 [deliberative process] threshold."). "The role the documents played is to impart information to other NHTSA staff that they would consider as they sought to pursue their investigatory and enforcement activity with respect to the investigations and inquiries into certain aspects of Tesla's vehicles." Humphrey Decl. ¶ 20. "The withheld materials do not reflect a final decision." *Id.* "The sender of the document did not have final decisionmaking authority concerning the issue at question." *Id.*

Plaintiff does not grapple with the language in Defendants' declarations. To the extent Plaintiff urges that Defendants must further parse the deliberative process, Defendants' declaratory support confirms that, "[i]f NHTSA further described the information withheld, the description could identify the actual exempt information that NHTSA has protected." *Id.* ¶ 23. Further, as the Supreme Court has confirmed, "[o]ur emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 n.18 (1975). Here, the Agency has identified the deliberative process involved—namely, how "to pursue [its] investigatory and enforcement activity with respect to the investigations and inquiries into certain aspects of Tesla's vehicles." Humphrey Decl. ¶ 20. In light of the foregoing and Defendants' evidentiary support, Defendants' descriptions of these records demonstrate that their invocations of Exemption 5 are warranted. Accordingly, the Court should enter summary judgment in Defendants' favor.

## IV.   THE AGENCY HAS ADEQUATELY SUPPORTED ITS EXEMPTION 6 WITHHOLDINGS.

Plaintiff offers no objections to Defendants' Exemption 6 withholdings. Accordingly, as with Defendants' attorney-client and confidential commercial information withholdings, Plaintiff

has forfeited any arguments regarding these withholdings. *See supra* at Part III.A; *see also Lewis*, 2020 WL 1667656, at *1 n.2; *Schneider*, 2019 WL 4737059, at *4.

## CONCLUSION

For the reasons discussed above, the Agency properly invoked FOIA Exemptions 4, 5, and 6. Defendants respectfully request that the Court grant their motion for summary judgment.

Dated: April 28, 2025                      Respectfully submitted,

                                           EDWARD R. MARTIN, JR., D.C. Bar #481866
                                           United States Attorney

                                           By:        /s/ *Douglas C. Dreier*
                                           DOUGLAS C. DREIER, D.C. Bar #1020234
                                           Assistant United States Attorney
                                           601 D Street, NW
                                           Washington, DC 20530
                                           (202) 252-2551

                                           *Attorneys for the United States of America*