**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| AARON GREENSPAN, |
| _Plaintiff_, |
| v. |
| DEPARTMENT OF TRANSPORTATION, _et al._, |
| _Defendants_. |

No. 22-cv-280 (DLF)

**<u>MEMORANDUM OPINION</u>**

Aaron Greenspan brings this Freedom of Information Act (FOIA) action, _see_ 5 U.S.C. § 552, against the Department of Transportation and the National Highway Traffic Safety Administration (NHTSA) to obtain records concerning NHTSA's oversight of Tesla, Inc. (Tesla). Third Am. Compl. ¶ 1, Dkt. 21. Before the Court is Greenspan's Motion for Summary Judgment, Dkt. 38, and the defendants' Cross-Motion for Summary Judgment, Dkt. 43. For the following reasons, the Court will deny Greenspan's motion and grant the defendants' motion.

**I.    BACKGROUND**

Greenspan is the founder and operator of Plainsite, an online platform that seeks to "further legal transparency and anti-corruption." Third. Am. Compl. ¶ 2. In 2021, Greenspan submitted three FOIA requests to NHTSA for records concerning Tesla's self-driving technology, _id._ ¶ 8, radar disabling and removal, _id._ ¶ 39, and certain communications to or from NHTSA employee Ajit Alkondon, _id._ ¶ 21. NHTSA processed 23,898 pages of material in response to Greenspan's FOIA requests. Hendrickson Decl. ¶ 14, Dkt. 43-3. It withheld 1,385 documents constituting 20,341 pages, 159 spreadsheets, and 64 media files under FOIA Exemption 4 (concerning

confidential business information), *id.*; material within 115 documents under FOIA Exemption 5 (concerning privileged information), Humphrey Decl. ¶ 18, Dkt. 43-4; and material within 684 documents, 127 spreadsheets, and 17 media files under FOIA Exemption 6 (concerning private information), *id.* ¶ 24.

On February 3, 2022, Greenspan filed this lawsuit.  His operative complaint alleges that NHTSA violated the FOIA in its response to each of his three requests.  *See* Third Am. Compl. ¶¶ 1, 49–72.  In December 2024, Greenspan moved for summary judgment, claiming that the "vast majority" of NHTSA's Exemption 4 withholdings were based on improperly adjudicated confidential treatment requests.  Pl.'s Mot. for Summ. J. at 5, Dkt. 38-1; *see id.* at 5–12.  The defendants cross-moved for summary judgment.  Defs.' Cross-Mot. for Summ. J. & Opp'n, Dkt. 43-1.

## II.    LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  All facts and inferences must be viewed in the light most favorable to the nonmoving party, and the agency bears the burden of showing that it complied with the FOIA.  *Chambers v. DOJ*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

To warrant summary judgment in a FOIA action, a federal agency must demonstrate that it "conduct[ed] a search reasonably calculated to uncover all relevant documents," *Kowalczyk v. DOJ*, 73 F.3d 386, 388 (D.C. Cir. 1996) (citation modified), and that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements," *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186

(D.C. Cir. 1973).  To withhold records covered by an exemption, the agency must further show that (1) "it reasonably foresees that disclosure would harm an interest protected by that exemption"; and (2) "it has released any reasonably segregable information within the exempt records that could be disclosed without causing reasonably foreseeable harm to an interest protected by that exemption." *Rudometkin v. United States*, 140 F.4th 480, 491 (D.C. Cir. 2025) (citation modified); *see id.* at 487–88; 5 U.S.C. § 552(a)(8)(A).  "[F]ederal courts . . . rely on government affidavits to determine whether the statutory obligations of the FOIA have been met." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam).  "Agency affidavits are accorded a presumption of good faith," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and "summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith," *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (citation modified).  "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

## III.    ANALYSIS

The parties disagree whether (1) NHTSA properly justified its invocation of Exemption 4 to withhold information (a) that is confidential and (b) disclosure of which would cause foreseeable harm; (2) NHTSA properly justified its invocation of Exemption 5 to withhold information under the deliberative process privilege; (3) NHTSA disclosed all reasonably segregable material; and

(4) NHTSA acted in good faith.[1]  For the reasons that follow, the Court will conclude that the defendants have shown that NHTSA met its FOIA obligations as to each of these issues.

### A.    Exemption 4

Exemption 4 allows an agency to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 522(b)(4).  "When an agency withholds non-trade-secret information under Exemption 4, it must demonstrate that the withheld information is (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential."  *Citizens for Resp. and Ethics in Wash. (CREW) v. DOJ*, 58 F.4th 1255, 1262 (D.C. Cir. 2023) (citation modified).  NHTSA has adequately shown—and Greenspan does not dispute—that its withholdings consist of commercial information obtained from Tesla.  *See* Gates Decl. ¶¶ 6, 10–66, Dkt. 43-5; *CREW*, 58 F.4th at 1265–66 (noting that "commercial" information includes that concerning "the making of a profit"); 5 U.S.C. § 551(2) ("[A] 'person' includes [a] . . . corporation.")*.*  Greenspan argues, however, that the information NHTSA withheld under Exemption 4 was not confidential and that its disclosure would not have resulted in reasonably foreseeable harm.  The Court disagrees.

---

[1] Because Greenspan narrowed the FOIA requests at issue in this case to those documents already processed, *see* Pl.'s Email, ECF 39-1, the adequacy of the search is not at issue.  Furthermore, Greenspan does not contest the defendants' arguments that NHTSA adequately supported its Exemption 5 withholdings based on the attorney-client communications and confidential commercial information privileges and its Exemption 6 withholdings.  *See* Defs.' Cross-Mot. for Summ. J. & Opp'n at 33–38; Defs.' Reply at 15–19, Dkt. 47; *see generally* Pl.'s Reply & Opp'n, Dkt. 45.  As to these issues, therefore, "there is no dispute for the Court to adjudicate, and the requirements of Rule 56 have been satisfied."  *Dutton v. DOJ*, 302 F. Supp. 3d 109, 126 n.6 (D.D.C. 2018); *see Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

1.      *Confidential*

The term "confidential" means "private or secret."  *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 434 (2019) (citation modified).  Two conditions suggest confidentiality: (1) the information is "customarily kept private, or at least closely held, by the person imparting it," such that it is "known only to a limited few," "not publicly disseminated," or "intended to be held in confidence or kept secret"; and (2) the receiving party "provides some assurance that [the information] will remain secret."  *Id.* (citation modified).  "At least where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4."  *Id.* at 440.

NHTSA's withholdings meet both criteria.  The declaration of Eddie Gates, the Director for Field Reliability Engineering at Tesla, establishes that Tesla "customarily and actually treats" the withheld documents as "technical and proprietary information."  Gates Decl. ¶ 6; *see id.* ¶¶ 6–7.  Indeed, Tesla uses "binding nondisclosure agreements or similar mechanisms" when sharing that information with outside consultants and "takes extensive measures to guard and protect this information even internally."  *Id.* ¶ 6.  Tesla also provided the withheld information to NHTSA "under an assurance that the information w[ould] remain confidential and w[ould] be kept private," *id.* ¶ 9, as the declaration of Allison Hendrickson, a NHTSA Senior Trial Attorney, confirms, *see* Hendrickson Decl. ¶ 16; *see also* 49 U.S.C. § 30167; 49 C.F.R. § 512.

Greenspan does not dispute that Tesla customarily keeps the withheld information private, or that NHTSA assured Tesla that it would keep the withheld information secret.  Instead, he cites news stories and information leaks to argue that, even if the withheld information remains private and under Tesla's control, "it is still true that *similar* information of the *same type* absolutely does

not." Pl.'s Reply & Opp'n at 8; *see id.* at 8–10.  It is true that "materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *CREW*, 58 F.4th at 1271 (citation modified).  But, "[a]s the party advocating disclosure, [Greenspan] bears the burden of production and must point to specific information in the public domain that appears to duplicate that being withheld." *Id.* (citation modified).  "Prior disclosure of similar information does not suffice; instead, the *specific* information sought by [Greenspan] must already be in the public domain by official disclosure." *Id.* (citation modified).

The only specific and actually withheld information that Greenspan identifies as being in the public record relates to the terms of Tesla's Early Access Program.  *See* Pl.'s Reply & Opp'n at 9–10.  But he fails to show that this information was *officially* disclosed.  *See id.* at 9 ("[A] member of Tesla's Early Access Program . . . posted an e-mail he received from Tesla stating that he had been 'posting its internal information.'"); *cf. Kowal v. DOJ*, 107 F.4th 1018, 1033 (D.C. Cir. 2024) ("[A]n unauthorized disclosure does not waive a FOIA exemption.").  As such, Greenspan has not met his burden of establishing any prior disclosure of the withheld information.

Greenspan's primary argument to contest confidentiality—and the sole basis for his summary judgment motion—rests on his interpretation of 49 C.F.R. § 512.17.  As relevant, that regulation states: "When information claimed to be confidential is requested under the [FOIA], the determination will be made within twenty (20) working days after NHTSA receives such a request or within thirty (30) working days in unusual circumstances."  49 C.F.R. § 512.17(a).  From this language, Greenspan reasons that NHTSA must grant or else deem expired any related confidential treatment requests within 20 working days of a FOIA request.  Pl.'s Mot. for Summ. J. at 5–7.  According to Greenspan, documents under "expired" confidential treatment requests are, by

default, not confidential and cannot be withheld under FOIA Exemption 4. *See id.* at 1, 5–7. Because NHTSA waited more than 20 days before granting Tesla's "expired" confidentiality requests, he argues, NHTSA improperly withheld the underlying documents as confidential. *See id.*

The Court disagrees—indeed, it has already rejected this argument twice over. *See* Order at 4, Dkt. 28 (Order I); Order at 4–5, Dkt. 33 (Order II).

*First*, even if Greenspan's interpretation of 49 C.F.R. § 512.17 is correct, "whether an agency treats information as confidential is not dispositive of whether that information may be withheld under FOIA." Order I at 4. "[T]he federal courts, and not the administrative agencies, are ultimately responsible for construing the language of the FOIA," and "agencies cannot alter the dictates of the Act by their own express or implied promises of confidentiality." *Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1287 (D.C. Cir. 1983); *cf. id.* ("[A]lthough the FDA has endorsed the *Restatement* definition [of 'trade secret'] and adopted it in its FOIA regulations, we are not bound by the agency's interpretive regulation."). Just as "there is nothing about the failure of an agency to produce documents promptly that would require the agency to waive otherwise properly claimed FOIA exemptions," *Skurow v. DHS*, 892 F. Supp. 2d 319, 327 (D.D.C. 2012), there is likewise nothing about NHTSA's failure to make confidentiality determinations within regulatory deadlines that waives an otherwise properly claimed Exemption 4 withholding under the FOIA, *see* Order I at 4; *cf. Skurow*, 892 F. Supp. 2d at 327 ("An agency's failure to respond within the statutorily prescribed deadlines merely means that a requesting party may seek judicial supervision of the agency's response.").

*Second*, the regulations to which Greenspan points do not themselves support his argument that documents are presumptively public until a confidential treatment request is granted, or that

such a request can expire.  *Contra* Pl.'s Mot. for Summ. J. at 7–8.  Rather, the regulations

contemplate that "[i]nformation received by NHTSA, for which a properly filed confidentiality

request is submitted, will be kept confidential until the Chief Counsel makes a determination

regarding its confidentiality."  49 C.F.R. § 512.20(a); *see id.* § 512.23(a)(4) ("No information will

be disclosed . . . unless the submitter of the information is given written notice."); *id.* § 512.18(b)

("If a request for confidential treatment is denied in whole or in part . . . [t]he information may be

made available to the public twenty (20) working days after the submitter of the information has

received notice of the denial, unless a request for reconsideration is filed.").  And nowhere do they

state that confidentiality requests expire if not ruled on within the 20-day timeframe.  Order II at

5.

Greenspan insists that a prior administrative appeal decision arising from one of his

previous FOIA requests vindicates his interpretation of 49 C.F.R. § 512.  *See* Pl.'s Mot. for Summ.

J. at 11–12.  But agency adjudications are not binding on this Court.  *Black Rock City LLC v.*

*Haaland*, 19-cv-3729, 2022 WL 834070, at *5 (D.D.C. Mar. 21, 2022).  And, in any event,

Greenspan's reading of the administrative appeal decision is unpersuasive.  As here, that decision

involved records that NHTSA withheld under Exemption 4.  *See* Administrative Appeal Decision

at 2–3, Dkt. 26-1.  Unlike here, however, the withheld documents were subject to *pending* requests

for confidential treatment.  *See id.* at 3.  As such, Chief Counsel Ann Carlsen remanded

Greenspan's FOIA request for "processing consistent with the regulatory requirements."  *Id.*

Greenspan argues that the fact that NHTSA's subsequent FOIA response did not again

invoke Exemption 4 establishes that the agency "viewed the request for confidential treatment as

denied and agreed that [Greenspan] defeated any Exemption 4 objection."  Pl.'s Mot. for Summ.

J. at 12.  But again, Greenspan's interpretation falters.  As an initial matter, the defendants

represent that NHTSA is "continu[ing] to process the FOIA request [Greenspan] references." Defs.' Statement of Material Facts at 8, Dkt. 43-2. As the agency may yet withhold documents under approved confidentiality requests, there is no basis on which to conclude that the agency has abandoned reliance on Exemption 4 in that matter. Furthermore, Greenspan ignores aspects of the administrative appeal decision that directly undercut his preferred reading. True, the decision notes that confidentiality determinations "will ordinarily be made within twenty working days." Administrative Appeal Decision at 3. But it further states that, "when a properly filed confidentiality request is submitted for information submitted to the agency, it 'will be kept confidential until the Chief Counsel makes a determination regarding its confidentiality'" and that "[i]nformation subject to such a request 'will not be disclosed publicly.'" *Id.* at 2–3 (quoting 49 C.F.R. § 512.20). If anything, therefore, the decision affirms that Tesla's information is presumed confidential *until* NHTSA renders a determination, even if that determination is made after the ordinary 20-day timeframe.

Accordingly, the defendants have adequately shown the confidentiality of NHTSA's Exemption 4 withholdings under the FOIA criteria.[2]

       2.      *Foreseeable Harm*

To withhold records under a FOIA exemption, an agency must show that it "reasonably foresees that disclosure would harm an interest protected by that exemption." *Rudometkin*, 140

---

[2] In moving for summary judgment, Greenspan invokes, for the first time, the *Accardi* doctrine to argue that NHTSA has violated a rule—*i.e.*, 49 C.F.R. § 512.17—that "limits the agency's discretion and imposes rights or obligations on the respective parties." Pl.'s Mot. for Summ. J. at 8 (citation modified); *see id.* at 8–9. To the extent that Greenspan is now asserting an *Accardi* claim, summary judgment is limited to claims raised in the complaint. *See Winder v. District of Columbia*, 555 F. Supp. 2d 103, 110–11 (D.D.C. 2008). And to the extent that Greenspan is arguing that NHTSA is bound to a regulatory timeline such that it cannot withhold the requested documents as confidential under the FOIA, the Court has already rejected that proposition.

F.4th at 491 (citation modified); *see* 5 U.S.C. § 552(a)(8)(A).  In the Exemption 4 context, this requirement is met if disclosure would "caus[e] genuine harm to the submitter's economic or business interests and thereby dissuad[e] others from submitting similar information to the government."  *CREW v. DOJ*, 728 F. Supp. 3d 113, 125 (D.D.C. 2024) (citation modified).

NHTSA reasonably determined that disclosure of the withheld information would genuinely harm Tesla's commercial interests.  The Gates Declaration is no "perfunctory, sweeping, and undifferentiated declaration."  *Reps. Comm. for Freedom of the Press (RCFP) v. FBI*, 3 F.4th 350, 372 (D.C. Cir. 2021).  Rather, it categorizes each withheld document into dozens of categories of confidential information.  *See* Gates Decl. ¶ 10–66; *see also Rudometkin*, 140 F.4th at 491 ("[T]he Government may justify withholding or redacting records category-of-document by category-of-document rather than document-by-document." (citation modified)).  Nor does the declaration offer mere "boilerplate" assertions of harm.  *Leopold v. DOJ*, 19-cv-2796, 2021 WL 3128866, at *4 (D.D.C. July 23, 2021) ("While nearly identical boilerplate statements of harm are insufficient, the mere recitation of similar reasoning in showing harm does not by itself render that reasoning 'boilerplate.'" (citation modified)).  *Contra* Pl.'s Reply & Opp'n at 10–11.  Indeed, the declaration articulates direct links between each specified harm and the specific information within each category of withheld material.  *See* Gates Decl. ¶¶ 11–66; *see also, e.g.*, *id.* ¶ 42 ("Public disclosure of Tesla's data logs reveals the type of information Tesla is able to collect from vehicles, how the data is collected and in what format, and how Tesla can use vehicle data to evaluate field incidents.  Public disclosure of this confidential information would enable competitors to improve their own data collection practices and ultimately improve their products and customer experience."); *id.* ¶ 65 ("Public disclosure of Tesla Service estimates would cause competitive harm to Tesla by giving Tesla's competitors insight into how Tesla Service evaluates, diagnoses

and repairs vehicles[,] . . . [which] would be used by competitors to improve their own service-related processes and customer service."). NHTSA, for its part, "performed a line-by-line review of the documents withheld in full or in part and confirmed . . . that further . . . disclosure of the[ withheld] records would cause foreseeable competitive harm to Tesla and, because disclosure would impact the willingness of entities such as Tesla to provide confidential information, foreseeable harm to NHTSA itself in obtaining information necessary to fulfill its core safety mission." Hendrickson Decl. ¶ 25; *see id.* ¶ 21 ("NHTSA has reviewed the declaration of Eddie Gates, in connection with its own independent review of the records at issue, and is independently satisfied that the records that NHTSA has withheld in full or in part are appropriately withheld under Exemption 4."). In the Court's view, these representations reflect that NHTSA has "specifically and thoughtfully determined that it reasonably foresees that disclosure of [these documents] would be harmful." *Groenendal v. Exec. Off. for U.S. Att'ys*, 20-cv-1030, 2024 WL 1299333, at *13 (D.D.C. Mar. 27, 2024) (citation modified).

In response, Greenspan contends that the withholdings are "less likely" to contain any harmful competitive information because (1) Tesla products have "barely changed," (2) enthusiasts have published deconstructions of their own Tesla vehicles, and (3) the Early Access Program terms have been publicly litigated. Pl.'s Reply & Opp'n at 11. But the accessibility of *other* publicly available documents does not eliminate the harm associated with releasing these specific documents. In fact, the "public availability of analogous data" can "make the requested data more harmful if the public data can be combined with the requested data to obtain commercial information that is likely to cause substantial competitive harm." *Biles v. HHS*, 931 F. Supp. 2d 211, 225 (D.D.C. 2013). And Greenspan has not shown that Tesla officially confirmed whether any of that public information is true, which "can be informative in itself" to

Tesla's competitors. *Savage v. DOJ*, No. 22-cv-2477, 2024 WL 2880438, at *10 (D.D.C. June 7, 2024); *cf. Knight First Amend. Inst. at Columbia Univ. v. CIA*, 11 F.4th 810, 816 (D.C. Cir. 2021) ("[A] statement made by one in a position to know is given unique meaning and weight. While information from outside an agency may be viewed as possibly erroneous, confirmation by the agency itself would remove any lingering doubts." (citation modified)).

The defendants have met their burden of showing that Tesla faces foreseeable harm from the disclosure of the withheld information.

## B.    Exemption 5

Exemption 5 protects "intra-agency" documents from disclosure, 5 U.S.C. § 552(b)(5), by incorporating "the traditional privileges that the Government could assert in civil litigation against a private litigant," *Loving v. DOJ*, 550 F.3d 32, 37 (D.C. Cir. 2008) (citation modified). Because NHTSA's Exemption 5 withholdings consist of documents sent from agency staff or attorneys to other agency staff or attorneys and other internal documents, *see* Exemption 5/6 *Vaughn* Index, Defs.' Ex. 2 at 77–81, 101–07, Dkt. 43-7, they qualify as intra-agency documents. The question before the Court is whether these documents would be subject to a traditional privilege.

NHTSA determined that material in 111 documents was exempt from disclosure under the deliberative process privilege,[3] Humphrey Decl. ¶ 18, under which agencies may withhold "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated," *Petrol. Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citation modified). To invoke the deliberative process privilege, an agency must show that the withheld information is

---

[3] The agency also withheld under Exemption 5 material that the agency determined was exempt under the attorney-client privilege and the confidential commercial information privilege. Humphrey Decl. ¶ 18. Those withholdings are not at issue. *See supra* n.1.

"predecisional" and "deliberative." *Id.* at 1434 (citation modified). A document is "predecisional" if "it was generated before the adoption of an agency policy" and "deliberative" if "it reflects the give-and-take of the consultative process." *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (citation modified); *see Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (Exemption 4 "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."). "[T]he agency invoking the deliberative process privilege must show (1) what deliberative process is involved, and (2) the role played by the documents in issue in the course of that process." *Jud. Watch, Inc. v. DOJ*, 20 F.4th 49, 55 (D.C. Cir. 2021) (citation modified). Two additional factors "can assist the court in determining whether this privilege is available": "the nature of the decisionmaking authority vested in the officer or person issuing the disputed document and the relative positions in the agency's chain of command occupied by the document's author and recipient." *Senate of Puerto Rico ex rel. Judiciary Comm. v. DOJ*, 823 F.2d 574, 586 (D.C. Cir. 1987) (citation modified).

The defendants have adequately justified NHTSA's Exemption 5 withholdings under the deliberative process privilege. The withheld agency communications and drafts predated the specific and final decision whether to investigate Tesla, as they concerned "how to proceed with NHTSA's investigatory and enforcement activity concerning Tesla's vehicles." Humphrey Decl. ¶ 20. *Contrast Inst. for Energy Rsch. v. FERC*, No. 22-cv-3420, 2024 WL 551651, at *7 (D.D.C. Feb. 12, 2024) (collecting cases in which "the agency [improperly] withheld portions of substantive memoranda, emails, or other documents on the basis that they discussed *broad policy issues*" (emphasis added)). The withholdings were also deliberative, as they "reflected . . . consultative discussions," *Energy Pol'y Advocs. v. SEC*, 699 F. Supp. 3d 56, 64

(D.D.C. 2023), and were generated in the "process of formulating strategies and approaches towards next steps or options in connection with [NHTSA's investigatory and enforcement activity]," Humphrey Decl. ¶ 19.  Indeed, the documents served "to impart information to other NHTSA staff that they would consider as they sought to pursue their investigatory and enforcement activity with respect to the investigations and inquiries into certain aspects of Tesla's vehicles." *Id.* ¶ 20.  Finally, "the nature of the decisionmaking authority vested in the . . . person[s] issuing the disputed document[s]" further indicates that the materials were predecisional and deliberative, *Jud. Watch*, 20 F.4th at 55 (citation modified), as the authors "did not have final decisionmaking authority concerning the issue," and the materials "d[id] not reflect a final decision," Humphrey Decl. ¶ 20; *see Tax'n with Representation Fund v. IRS*, 646 F.2d 666, 679– 80 (D.C. Cir. 1981).  Greenspan "provides no basis for this court to conclude that [NHTSA] has mischaracterized the content of the material withheld under Exemption 5." *Cabezas v. FBI*, 109 F.4th 596, 605 (D.C. Cir. 2024).

The defendants have also shown that NHTSA satisfied the foreseeable harm requirement as to these documents.  In addition to providing sufficient "context or insight into the specific decision-making processes or deliberations at issue," NHTSA explained how the agency "in particular would be harmed by disclosure." *Ctr. for Investigative Rep. v. U.S. Custom & Border Prot.*, 436 F. Supp. 3d 90, 107 (D.D.C. 2019) (citation modified).  In particular, the Humphrey Declaration attests that disclosure of the withheld documents would lead "agency personnel [to] become hesitant to candidly discuss ideas or proposals for handling safety investigations." Humphrey Decl. ¶ 19; *cf. Energy Pol'y Advocs.*, 699 F. Supp. 3d at 66 (agency established foreseeable harm by explaining how disclosure would "lead staff to be less forthcoming in future rulemaking discussions").

Because the withheld documents were predecisional and deliberative, and could not be disclosed without causing foreseeable harm, NHTSA properly invoked the deliberative process privilege.

### C.    Segregability

Finally, the FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  Pursuant to this "segregability" requirement, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."  *Mead Data Cent. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  Although the D.C. Circuit has not identified the exact level of detail required to justify non-segregability, "[a]ffidavits attesting to the agency's line-by-line review of each document withheld in full and the agency's determination that no documents contained releasable information which could be reasonably segregated from the nonreleasable portions, in conjunction with a *Vaughn* index describing the withheld record, suffice."  *Ecological Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 66 (D.D.C. 2021) (citation modified) (citing *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002)).  Agencies, moreover, "are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

The defendants have shown that NHTSA satisfied these requirements.  The Hendrickson and Humphrey declarations attest that the agency "performed a line-by-line review of the documents withheld in full or in part and confirmed, as further described in NHTSA's *Vaughn* index, that further segregation or disclosure . . . would cause foreseeable competitive harm to Tesla and . . . foreseeable harm to NHTSA itself."  Hendrickson Decl. ¶ 25; *see* Humphrey Decl. ¶ 23;

*see also Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371–72 (D.C. Cir. 2020) ("line-by-line review" of documents is sufficient); *Emuwa v. DHS*, 113 F.4th 1009, 1017 (D.C. Cir. 2024) (segregability analysis satisfied where agency declarant "confirmed that her office 'reviewed' the redactions to 'consider whether any information could be segregated and released without causing a foreseeable harm to the agency'" and "explained the agency's view that 'no further segregation' was possible without disclosing such information" (citation modified)).    The defendants' declarations and *Vaughn* index, combined with the presumption of agency compliance, are sufficient to establish that NHTSA complied with its segregability obligations.

Greenspan objects that, given that NHTSA segregated *other* documents, "it is unclear why the withheld documents cannot be [segregated]."  Pl.'s Reply & Opp'n at 11.  But the fact that NHTSA segregated some materials supports, rather than undermines, the conclusion that NHTSA conducted a good faith segregability analysis.  *Cf. Cause of Action Inst. v. U.S. Dep't of Veterans Affs.*, No. 20-cv-997, 2021 WL 1549668, at *17 (D.D.C. Apr. 20, 2021) ("An agency's revision of its previous segregability determination does not, as plaintiff suggests, raise an inference that the agency has failed to comply with its obligation to release all reasonably segregable, non-exempt information.  To the contrary, supplemental releases of information evidence a good-faith effort on the agency's part to segregate nonexempt information where possible." (citation modified)).  Greenspan has not offered any evidence sufficient to overcome the presumption that NHTSA satisfied its segregability obligation.  *See Sussman*, 494 F.3d at 1117.

### D.    Bad Faith

Finally, Greenspan argues that NHTSA acted in persistent "bad faith" by "retroactively grant[ing] expired confidential treatment requests . . . often *the day before a production deadline*."  Pl.'s Mot. for Summ. J. at 5.  Summary judgment for an agency "may be inappropriate" in an

instance of agency bad faith "because such conduct could undermine the reliability of affidavits the court must rely on." *Chase v. DOJ*, 301 F. Supp. 3d 146, 158 (D.D.C. 2018). "[T]o overcome the presumption of good faith," however, a plaintiff must "offer a concrete basis upon which the court may conclude" that the agency acted in bad faith, *Kay v. FCC*, 976 F. Supp. 23, 34 (D.D.C. 1997), not "purely speculative claims," *SafeCard Servs.*, 926 F.2d at 1200 (citation modified); *see id.* at 1202.

For the reasons discussed above, Greenspan at most accuses NHTSA of untimely adjudications of requests for confidential treatment under agency regulations. But "courts routinely find that delays in responding to FOIA requests are not, in and of themselves, indicative of agency bad faith." *Chase*, 301 F. Supp. 3d at 158 (citation modified); *see id.* (collecting cases). Indeed, even for statutory timelines, "delay alone cannot be said to indicate an absence of good faith." *Goland v. CIA*, 607 F.2d 339, 355 (D.C. Cir. 1978). Because Greenspan's only non-speculative evidence of bad faith is of agency delay in alleged tension with regulatory timeframes, he fails to overcome the good faith presumption to which NHTSA is entitled.[4]

---

[4] Greenspan makes similar arguments in support of his claim that "[t]he sworn declarations of NHTSA Attorneys Allison Hendrickson and Shonda Humphrey are false." Pl.'s Reply & Opp'n at 5. In particular, Greenspan contends that Hendrickson's representation that NHTSA followed applicable legal standards is false in light of the timeframes set forth in 49 C.F.R. §§ 7.31 and 512.17 and emphasizes that neither declaration references 49 C.F.R. § 512.17. *See id.* at 5–7. But the Hendrickson declaration does not represent that NHTSA reviewed the requests within 49 C.F.R. § 512.17's 20-day timeframe. Rather, it states that NHTSA attorneys made "confidentiality determination[s] in accordance with legal standards," Hendrickson Decl. ¶ 9, and "based on prevailing legal standards," *id.* ¶ 26. The Court has rejected Greenspan's argument that NHTSA's confidentiality determinations must be rendered within the regulatory timeframe in order for documents to be lawfully withheld under FOIA Exemption 4. And delays contrary to regulatory deadlines are not evidence of agency bad faith. *See Chase*, 301 F. Supp. 3d at 158. Greenspan therefore "fails to offer a concrete basis upon which the court may conclude" that Hendrickson or Humphrey has acted in bad faith. *Kay*, 976 F. Supp. at 34.

**CONCLUSION**

For the foregoing reasons, the Court denies Greenspan's Motion for Summary Judgment, Dkt. 38, and grants the defendants' Cross-Motion for Summary Judgment, Dkt. 43. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

September 8, 2025